IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs April 11, 2007

## JAMES E. RASBERRY v. ORMAN CAMPBELL, O.D., ET AL.

Direct Appeal from the Chancery Court for Shelby County
No. CH-05-0881-1     Walter L. Evans, Chancellor

No. W2006-01668-COA-R3-CV - Filed August 31, 2007

Plaintiff brought suit to enforce a contract for the sale of real estate contending that one of the selling heirs was the authorized agent of the remaining heirs to enter into the agreement. Defendants filed a motion for summary judgment supported by affidavits and the Plaintiff countered with his affidavit. Finding no genuine issue of material fact, the trial court granted the motion and we affirm.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY M. KIRBY, J., joined.

S. Joshua Kahane, Memphis, Tennessee, for the appellant, James E. Rasberry.

John Helflin, III and Thomas R. Dyer, for the appellees, Orman Campbell, O.D., Cathryn Pitts Campbell Holland, Christy Campbell Lino, Beverly Allene Campbell Swain, Bonnie H. Campbell, Carolyn Campbell Scalan, Orman Campbell, Trustee of the Gary Ehteredge Campbell Trust.

### OPINION

This litigation results from a dispute over a contract for the purchase of real estate. At the time of her death, Frances Edwina Campbell owned a parcel of real estate known as 216 South Cooper, in Memphis, Tennessee. Her last will and testament was admitted into probate on April 24, 1996, and the decedent's brother, Orman Campbell, O.D. (Dr. Campbell) was appointed to serve as executor of his sister's estate. The six adult heirs of the decedent's residuary estate are as follows:

| | |
|---|---|
| The Gary Etheredge Campbell Trust, Dr. Campbell as Trustee (nephew) | 25% |
| Carolyn Pitts Campbell Holland (niece) | 25% |

Beverly Ailene[1] Campbell Swain (niece)                                    25%

Bonnie H. Campbell, Carolyn Campbell Scalan and                25%
Christy Campbell Lino (Edwina's great nieces and the sole issue
of Edwina's nephew Norman Campbell, Jr., deceased)

The property was subsequently leased to Preferred Auto Insurance Company, Inc. The lessor was identified as "Edwina Campbell's heirs that are represented by Campbell Rental of Chester County, Tennessee." Lessee was given an option to purchase the property but subsequently advised that it did not wish to exercise that option. However, Lessee did opt to exercise its option to continue to lease.

Negotiations began between the plaintiff herein, James E. Rasberry (Mr. Rasberry), and Dr. Campbell. A sales prices of $320,000 was agreed upon as evidenced by a written contract executed by Orman Campbell as seller and James E. Rasberry as purchaser. The document called for a closing date of November 1, 2004. Seller had the right to extend closing until December 31, 2004. The sale to Mr. Rasberry was not consummated as will be discussed hereinafter. By a deed dated December 22, 2004, this property was conveyed by the Campbell heirs to Foremost Partners, a Tennessee General Partnership composed of Larry Kelley, Jeff Kelley, Clint Haley and Danny Lazenby (Foremost Partners).

On May 9, 2005, the present action was begun when Mr. Rasberry filed a complaint against Orman Campbell, M.D., Cathryn Pitts Campbell Holland, Christy Campbell Lino, Beverly Allene Campbell Swain, Bonnie H. Campbell, Carolyn Campbell Scalan, Orman Campbell, Trustee of the Gary Etheredge Campbell Trust, Foremost Partners, a Tennessee General Partnership, Larry Kelley, Jeff Kelley, Clinton B. Haley and Danny W. Lazenby. Plaintiff sought specific performance, sought to recover for breach of contract, alleged that Defendant Dr. Campbell was given actual and apparent authority to enter into the contract on behalf of the remaining heirs, and alleged intentional misrepresentation by the Defendant heirs, as well as Dr. Campbell. With respect to Foremost Partners, the complaint alleged that it intentionally interfered with Mr. Rasberry's contract to purchase the property and induced the breach of said contract. The complaint further alleged civil conspiracy between the Defendant heirs and Foremost Partners.

An answer to the complaint was filed by the Campbell heirs. Foremost Partners filed an answer to the complaint and a cross-claim against the Defendant Campbell heirs.[2]

A Motion for Summary Judgment was filed by the Campbell heirs alleging that it is uncontroverted that the defendant Heirs never gave Dr. Campbell authority to enter into the contract

---

[1] According to Ms. Swain's affidavit, the correct spelling is Allene.

[2] The complaint filed by Mr. Rasberry against Defendants Foremost Partners, Larry Kelley, Jeff Kelley, Clinton B. Haley and Danny W. Lazenby was dismissed without prejudice. The claim filed by Foremost Partners against the Campbell heirs was likewise dismissed without prejudice.

of sale. Further, Plaintiff cannot infer that Defendants having permitted Dr. Campbell to enter into a lease of the property also authorized him to enter into the contract to sell the property to a stranger unconnected to the lease. It further alleges that it is uncontroverted that the Defendant heirs never held Dr. Campbell out to Plaintiff or anyone else as possessing such authority. The motion was granted and Mr. Rasberry perfected a timely appeal.

### *Issues Presented*

The issues presented, as set forth in the appellant's brief, are as follows:

1. Did the Trial Court err in determining that there were no genuine issues of material fact as to whether Dr. Campbell was given actual authority to bind the other Defendant/Appellees to a sale of the subject property?

2. Did the Trial Court err in determining that there were no genuine issues of material fact as to whether Defendant/Appellees "clothed" Dr. Campbell with apparent authority to act [in their behalf] to sell the subject property?

3. With respect to the causes of action alleged in the Complaint, did the Trial Court err in determining that there were not other genuine issues of material fact and therefore a grant of summary judgment was appropriate as a matter of law?

### *Standard of Review*

This Court's standard of review is well settled. As this Court stated in *Holland v. City of Memphis*:

> We review a trial court's award of summary judgment *de novo*, with no presumption of correctness. *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). Summary judgment should be awarded when the moving party can demonstrate that there are no genuine issues regarding material facts and that it is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04; *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993); *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). Mere assertions that the nonmoving party has no evidence does not suffice to entitle the movant to summary judgment. *McCarley*, 960 S.W.2d at 588. The moving party must either conclusively demonstrate an affirmative defense or affirmatively negate an essential element of the nonmoving party's claim. *Id.* If the moving party can demonstrate that the nonmoving party will be unable to carry its burden of proof on an essential element, summary judgment is appropriate. *Id.*
>
> When a party makes a motion for summary judgment in accordance with Tenn. R. Civ. P. 56, the burden shifts to the nonmoving party to establish the

existence of disputed material facts or that the moving party is not entitled to judgment as a matter of law. *Id.*; *Staples v. CBL & Assocs.*, 15 S.W.3d 83, 89 (Tenn. 2000). The nonmoving party cannot merely rely on the pleadings, but must demonstrate essential elements of a claim by: 1) pointing to evidence that creates a factual dispute; 2) re-enforcing evidence challenged by the moving party; 3) offering additional evidence which establishes a material dispute; 4) submitting a Tenn. R. Civ. P. 56.06 affidavit explaining the need for additional time for discovery. *McCarley*, 960 S.W.2d at 588.

*Holland v. City of Memphis*, 125 S.W.3d 425, 427 (Tenn. Ct. App. June 10, 2003).

*Opinion*

Mr. Rasberry contends that a disputed fact exists as to whether Dr. Campbell had the authority of the remaining heirs to enter into the contract. He contends that Dr. Campbell expressly stated to him that he had authority to sell the property. He further contends that his attorney received a proposed warranty deed from the sellers' attorney which contained signature blanks for Dr. Campbell and the remaining heirs by and through their agent and power of attorney, Dr. Campbell. Mr. Rasberry further contends that Dr. Campbell acted with actual authority or apparent authority in this transaction.

'Actual authority' may be defined as the power which a principal intentionally confers upon the agent, or intentionally or by lack of ordinary care allows the agent to believe himself or herself to possess. Such authority is created by written or spoken words or other conduct of the principal which, reasonably interpreted, causes the agent to believe that the principal desires him or her so to act on the principal's account. An actual agency exists where a principal manifests to another that the other has the authority to act on the principal's behalf and subject to the principal's control and the other, meaning the agent, consents to act on his or her principal's behalf and subject to the principal's control.

2 A C.J.S. *Agency* § 133 (2003).

Tennessee has defined actual authority as "consist[ing] of the powers which a principal directly confers upon an agent or causes or permits him to believe himself to possess." *Volunteer Concrete Walls, LLC v. Community Trust & Banking Co.*, No. E2006-00602-COA-R3-CV, 2006 WL 3497894, at *2 (Tenn. Ct. App. Sept. 21, 2006), *perm. app. denied* (Tenn. Mar. 12, 2007)(citing *Milliken Group, Inc. v. Hays Nissan, Inc.*, 86 S.W.3d 564, 567 (Tenn. Ct. App. Dec. 13, 2001); 2A C.J.S. *Agency* § 147 (1972)).

Apparent authority is

> created where a person by words or conduct represents or permits it to be represented that another person is his or her agent, when no actual agency exists. An apparent or ostensible agent is one whom the principal has intentionally or by lack of ordinary care induced third persons to believe is his or her agent, although no authority has been conferred on him or her, either expressly or by necessary implication.

2A C.J.S. *Agency* § 140 (2003). Tennessee courts have held that "apparent authority exists when a principal's conduct clothes the agent with the appearance of authority." *Volunteer Concrete Walls*, 2006 WL 3497894 at *2 (quoting *S. Ry. Co. v.* Pickle, 197 S.W.2d 675, 677 (Tenn. 1917)). Additionally, in *White v. Methodist Hospital*, the court determined if an apparent agency existed by examining whether "(1) the principal actually or negligently acquiesced in another party's exercise of authority; (2) the third person had knowledge of the facts and a good faith belief that the apparent agent possessed such authority; and (3) the third person relied on this apparent authority to his or her detriment." *White v. Methodist Hosp. So.*, 844 S.W.2d 642, 646 (Tenn. Ct. App. 1992)). Apparent authority was defined in *Bells Banking Co. v. Jackson Centre, Inc.*, 938 S.W.2d 421 (Tenn. Ct. App. 1996) (citing C.J.S. *Agency* § 153 (1972)) as such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess. *Rich Printing Co. v. McKellar's Estate*, 330 S.W.2d 361, 376 (Tenn. Ct. App. 1959).

Appellant contends that if Dr. Campbell did not have actual or apparent authority over the property, he misrepresented himself as though he possessed the ability to sell the property.

> [A] plaintiff alleging fraudulent misrepresentation must address the following elements with particularity: 1) the defendant made a representation of an existing or past fact; 2) the representation was false when made; 3) the representation was in regard to a material fact; 4) the false representation was made either knowingly or without belief in its truth or recklessly; 5) plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation.

*McPherson v. Shea Ear Clinic*, No. W2006-01936-COA-R3-CV, 2007 WL 1237718, at *9 (Tenn. Ct. App. Jan. 18, 2007) (*no perm. app. filed*) (quoting *Metro. Gov't of Nashville and Davidson County v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)(citing *Graham v. First Am. Nat'l Bank*, 594 S.W.2d 723, 725 (Tenn. Ct. App. 1979))).

The affidavit of Dr. Campbell was filed in support of the motion for summary judgment along with the affidavits of Christy Campbell Lino and Beverly Allene Campbell Swain. Dr. Campbell stated in his affidavit that, prior to the execution of the agreement, he advised Mr. Rasberry that he would have to obtain approval from the other heirs. Christy Campbell Lino states

in her affidavit that she did not authorize Dr. Campbell to enter into the agreement. When she learned of it, in conversations with him and the other heirs, she questioned the purchase price and insisted that the property should be appraised before agreeing upon a sale price. With respect to the sale of the property to Foremost Partners, she did authorize Dr. Campbell to enter into the contract which she did personally sign.

Beverly Allene Campbell Swain stated in her affidavit that she did consent to Dr. Campbell signing the lease on the property on her behalf but she understood that if the Lessee exercised his option to purchase, it would be necessary for her to join in the deed of conveyance. Apart from authorizing Dr. Campbell to execute the lease and permitting him to collect and distribute the rents, she has never given him authorization to enter into any agreement affecting property in which she had an interest nor has she ever told anyone that she had given such authority. She did not authorize Dr. Campbell to enter into the agreement at issue here and when she learned of it, in conversation with Dr. Campbell and other heirs, she likewise questioned the purchase price and felt that it should be appraised before agreeing upon a sale price. In December, 2004, she agreed to the sale of the property to Foremost Partners, but did not authorize Dr. Campbell to enter into the contract, and she personally signed the contract to sell the property.

The affidavit of Mr. Rasberry was filed in response to the motion for summary judgment. In that affidavit he states that "[o]n or about October 7, 2004, Defendant Dr. Campbell told me that Carolyn Pitts Campbell Holland, Christy Campbell Lino, Beverly Aielene Campbell Swain, Bonnie H. Campbell, Carolyn Campbell Scalan and Orman Campbell, Trustee would have to approve the transaction, but assured me that they would agree to whatever he deemed appropriate, as he had always had authority to manage and control the property." We believe that this statement by Mr. Rasberry undermines any authority he presents Dr. Campbell as possessing. So long as he knew of the contingency, Dr. Campbell's statements of assurance are merely opinions. By his own statement, Mr. Rasberry knew at the time of entering into the contract that Dr. Campbell did not possess actual authority to sell the property. A condition existed of which both parties were aware.

As noted, actual authority consists of powers which the principal directly confers upon the agent or causes the agent to believe he possesses. *Hollingshead Co. v. Baker*, 1926 WL 2125, at *4 (Tenn. Ct. App. Dec. 7, 1926). The apparent power of an agent is determined by the acts of the principal, and not by the acts of the agent. *Kelly v. Cliff Pettit Motors*, 234 S.W.2d 822, 824 (Tenn. 1950). It is apparent from Mr. Rasberry's affidavit that he was aware that the remaining heirs would have to approve the transaction, even though Dr. Campbell felt that they would follow his recommendation. This is not disputed.

The judgment of the trial court granting summary judgment is affirmed and the costs of this cause are taxed to the appellant, James E. Rasberry, and his surety.

_____
DAVID R. FARMER, JUDGE

-6-